

Advocates for Workplace Fairness

**BY ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Defendant shall file a letter response by July 16, 2020.

So Ordered.

Dated: July 10, 2020
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

        Re:    *Amanda Johnson v. L'Oréal USA*, Case No. 18-cv-09786-LGS

Dear Judge Schofield:

        We represent Plaintiff Amanda Johnson ("Johnson") in the above-referenced action against Defendant L'Oréal USA ("L'Oréal"). Pursuant to Rule III(A)(1) of Your Honor's Individual Rules of Practice and Local Rule 37.2, we write respectfully to request a pre-motion conference to address several of L'Oréal's discovery deficiencies. Plaintiff's prior counsel (Vladeck, Raskin & Clark, P.C., which included now-current counsel Allison Van Kampen), conferred with Defendant over lengthy calls and correspondence over May-July 2019, after which Plaintiff believed additional production addressing most issues would be forthcoming. Since Outten & Golden's appearance in this matter close to a *year* later, we have come to learn that L'Oréal has made little additional progress in its production and has failed to produce discovery on a number of key issues, despite previously representing that ESI was "essentially complete." [1] On June 2 and July 1, 2020, Plaintiff conferred with Defendant on these issues, without resolution.[2]   Plaintiff respectfully requests the Court's intervention to compel production of necessary discovery materials so that this matter may finally progress forward.

        **ESI: Text Messages:** With the exception of a handful of hard copy text messages produced over a year ago, L'Oréal has not produced *any* text messages as part of ESI, including those Defendant claimed it relied upon to justify Plaintiff's firing.  Plaintiff first raised this issue with L'Oréal in summer 2019. A year later, no text messages have been produced, and L'Oréal now inexplicably claims it never considered text messages as part of ESI.  Coming from L'Oréal's experienced counsel, this position patently ridiculous.

---

[1] Contrary to this representation, on July 7, 2020, Defendant provided a list of *ten* categories of highly relevant documents it claims it will produce by July 14: (1) "Demographic information pertaining to the Executive Committee"; (2) "Documentation related to the Company's commitment to diversity and inclusion"; (3) "Any non-privileged investigation documents related to investigation(s) conducted while Plaintiff was employed and/or related to Plaintiff's behavior"; (4) "A copy of the World Wide Matrix 2018 final presentation"; (5) "Resume of the individual who eventually replaced Plaintiff"; (6) "Additional documents related to executive coaching"; (7) "Documents, if any exist, related to Dan [Bethelmy-Rada]'s performance"; (8) "Documents, if any exist, related to [Rada's] alleged disappearance"; (9) "Documents related to Plaintiff's performance"; (10) "Any additional responsive, non-privileged documents secured in Defendant's final email, document, and/or other review." Our understanding is that Defendant agreed to production of these materials more than a year ago.

[2] In contrast, since Outten & Golden appeared as counsel on May 20, 2020, Plaintiff has produced over 1,600 pages in response to L'Oréal's various follow-up inquiries.  We intend to make a final document production on or before July 14 (with the exception of treatment notes for four therapy sessions, which, as explained to Defendant, are currently inaccessible due to office closures in the pandemic, but should soon be in our possession).

Honorable Lorna G. Schofield
July 9, 2020
Page 2

Of concern, Defendant also admitted that, in the two years since Plaintiff first raised her claims, it has failed to take any steps to collect text messages, including from the parties' agreed-upon ESI custodians. Defense counsel informed Plaintiff on the July 1, 2020 call that it planned to initiate collection from three unilaterally-chosen custodians, and that it would limit these searches to communications concerning Plaintiff's firing. Defendant has since claimed that it will produce text messages from most of the agreed ESI custodians, but insists that the parties (again) meet and confer on search terms. This is too little, too late.

Text messages are key ESI in this matter, and L'Oréal should be compelled to produce these communications in accordance with the parties' previously agreed ESI protocol. As is clear from the 650+ pages of text messages Plaintiff has produced, text messaging was a commonly used (if not primary) method of communication at L'Oréal. Indeed, the key protected activity in this matter, of which L'Oréal has been aware since before it fired Johnson, is a text message between Johnson and her boss, Rada. That Defendant undertook *no* effort at all to locate and produce responsive text messages for nearly two years is overt discovery abuse that should be sanctioned. Given Plaintiff's concerns about Defendant's failure to comply with its preservation obligations, L'Oréal also should be compelled to produce any litigation holds, proof of when they were sent, and a list of recipients (all previously requested by Plaintiff).

**ESI: Other Issues, Potential Spoliation:** Plaintiff believes L'Oréal has not fulfilled its discovery obligations with respect to non-text message ESI. While the parties negotiated search terms and custodians between February 28 and July 25, 2019, it does not appear that L'Oréal conducted the agreed-upon searches. Specifically, Plaintiff has received little relevant ESI that does not include Plaintiff as a recipient.

After providing only a sample of hit counts based on Plaintiff's initial search terms, Defendant began its ESI production on July 23, before it received Plaintiff's revised search terms. (Subsequent requests for hit counts have been ignored, hindering Plaintiff's ability to modify searches.) While the parties agreed to an ESI protocol in February 2020, it appears that, for Plaintiff, it was a fool's errand, as Defendant claimed to have already essentially completed its ESI production at that point. On February 4 and 7, 2020, Plaintiff raised concerns that Defendant had produced few communications that did not include Johnson either as a direct sender/recipient or on copy, suggesting other custodians had not been searched. Defendant denied any such limitation. We reiterated these concerns on June 2, 2020, providing as an example the lack of communications concerning Plaintiff's firing. Defendant claimed that there were few written termination communications due to the allegedly "short timeframe" between the purported complaint(s) about Johnson and her dismissal. This justification does not align with statements in L'Oréal's Answer or its prior representations to the Court.[3]

Defendant changed its story yet again after we provided it with examples of emails – key to the decision to terminate Johnson – that were not produced as ESI. These emails had been produced in hard copy as part of Defendant's Initial Discovery Protocol responses back in early 2019. Defendant has been unable to explain why these emails were not collected and produced as part of ESI, beyond stating that the documents were "not available in the collected email." Curiously, just recently on June 26, 2020, Defendant made a supplemental production which

---

[3] Defendant in its Answer asserts that Plaintiff "was fired for a pattern of unprofessional conduct that surfaced during her final months" at L'Oréal. (Dkt. 22, Preliminary Statement). In the parties' February 2020 joint letter to the Court, L'Oréal stated, "In the first quarter of 2018 [more than three months before she was fired], Plaintiff met with … Human Resources on several occasions" concerning her performance and complaints received.

Honorable Lorna G. Schofield
July 9, 2020
Page 3

contained highly relevant ESI concerning Johnson's firing, although the production did not include the hard copy emails. On July 1, 2020 Defendant claimed to be investigating the issue, but has not provided any insight other than to suggest it had searched the @loreal.com domain but not the @matrix.com domain.[4] At best, Defendant has failed to search an entire email domain for relevant discovery. However, given that Defendant only produced relevant ESI concerning Johnson's firing two weeks ago (and made no effort to collect text messages), and only after Plaintiff challenged the sufficiency of its production, we believe L'Oréal has intentionally withheld discovery, or perhaps permitted spoliation. We therefore respectfully request a conference on this issue, and that L'Oréal be compelled to produce hit counts for all ESI searches, as well as all outstanding ESI.

**Defendant's Investigation:** Defendant refuses to produce discovery concerning its investigation of Johnson's claims referenced in its Answer and press statements,[5] asserting general objections based on "attorney-client privilege and/or [] work product." The requested material is not privileged, and, in any event, Defendant has waived any applicable privileges. For one, factual material (statements and documents) obtained in connection with the investigation is not privileged. *See, e.g.*, *Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 143 (S.D.N.Y. 2014). Specifically, statements made by witnesses to HR two years before defense counsel had an opportunity to prepare them for deposition cannot be replicated in discovery.

Moreover, L'Oréal relies on its internal investigation to both support its defense and publicly attack Plaintiff. By doing so, L'Oréal has waived any applicable privileges. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 462 (S.D.N.Y. 2019) ("Such one-sided reliance creates the type of unfairness to opposing counsel that waives the communication's privilege."); *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (privilege is forfeited "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion") (citation and internal quotation marks omitted). "[B]oth the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim or defense." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40, 47 (E.D.N.Y. Nov. 1, 2013); *Chevron Corp. v. Donziger*, No. 11 Civ. 691, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (unfair to permit party to "rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions").[6]

Here, Defendant has used its "investigation" to attack Plaintiff's credibility, thus putting at issue the credibility of the investigation L'Oréal contends failed to "corroborate" Plaintiff's claims. This material is indisputably relevant and should be produced. At the very least,

---

[4] We question this purported justification. Both the hard copy emails at issue and previous ESI were sent from "@matrix.com" email accounts.

[5] Specifically, that, "[Johnson's] allegations were promptly investigated. Defendant's investigation included interviewing Johnson's team members who would have been in a position to witness the alleged behaviors, including those identified in the Complaint as witnesses. *Not one* of those individuals corroborated Johnson's outlandish claims." Similarly, L'Oréal stated to the press that it "investigated [Johnson's allegations] with great care."

[6] Defendant has claimed that, in discussions with Plaintiff's prior counsel "in early 2020," it agreed to withdraw its *Farragher-Ellerth* defense, and, as a result, Plaintiff purportedly agreed not to seek the discovery concerning the investigation. Plaintiff's prior counsel disputes that any such agreement was reached, and Defendant has not formally withdrawn its defense. Even so, the presence of a *Farragher-Ellerth* defense is not the only consideration.

Honorable Lorna G. Schofield
July 9, 2020
Page 4

Defendant should be ordered to clarify and its explain its wholesale objections.[7]

    We thank the Court for its consideration.

                                            Respectfully submitted,

                                            /s/ Gregory S. Chiarello

                                            Gregory S. Chiarello
                                            Allison L. Van Kampen

c: All counsel of record (via ECF)

---

[7] Defendant has stated it will provide a privilege log for the 2018 investigation but has not yet done so.