

September 14, 2020

**VIA ECF**

Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

*Plaintiff's letter motion at Dkt. No. 76 is DENIED without prejudice to renewal at the time Plaintiff files any motions in limine.*

*By **September 30, 2020**, Defendant shall make any supplemental productions, including its production of responsive documents identified from Defendant's July 2020 collection.*

*The Clerk of Court is respectfully requested to close the letter motion at Dkt. No. 76.*

*So Ordered.*

*Dated:  September 15, 2020*
*          New York, New York*

*LORNA G. SCHOFIELD*
*UNITED STATES DISTRICT JUDGE*

**Re:   Amanda Johnson v. L'Oréal USA, Case No. 18-cv-09786 (LGS)**

Dear Judge Schofield:

We represent Defendant L'Oréal USA ("L'Oréal" or "Defendant") in the above-referenced matter. We write in response to Plaintiff's Letter Motion for Discovery Sanctions (Dkt. 76).

L'Oréal has gone to extraordinary lengths to provide full discovery in this matter. After engaging in extensive discovery, L'Oréal identified specific issues with its preservation and data collection. L'Oréal has been transparent, providing detailed updates, and taking steps to cure each issue in turn. L'Oréal has invested enormous resources in remedial measures. While L'Oréal's process was certainly not perfect, cumulative good-faith efforts ensured that potentially relevant data was located and searched, and gaps identified and filled. Consequently, Plaintiff has not been deprived of relevant information and suffers no prejudice. Plaintiff misrepresents L'Oréal's disclosures, misstates the law, and misunderstands the curing effect of L'Oréal's remedial measures. At the same time, Plaintiff ignores her own discovery failings. Plaintiff is entitled to relevant, reasonable and proportionate discovery, which L'Oréal has provided. Accordingly, sanctions are not warranted and Plaintiff's motion should be denied.

### I.   Background

As the Court is aware, this is a single-plaintiff matter involving allegations of discrimination and retaliation. Plaintiff's employment was terminated on June 19, 2018, due to inappropriate communications, and her data was promptly preserved, including her Office 365 ("O365") account. Key HR and business team members assisted with investigations and mediation, and in September 2018, in-house counsel directed Maria Morales (VP, HR) to send a notice directing them to preserve information concerning Plaintiff.[1] As detailed in our letter of July 16, 2020 (Dkt. 66), in spring 2019, L'Oréal collected a massive volume of email data from the O365 email

---

[1] Recipients included Plaintiff's manager, Dan Bethelmy-Rada; her peers Kelly Conroy, Nicolas Krafft, Nour Tayara, Chizuru Wykoff; and her direct reports, Nahema Consesa Alcolea, Jeanna Diorio and Taylor Griggs.

Honorable Lorna G. Schofield
September 14, 2020
Page 2

accounts of 11 custodians.[2] L'Oréal applied Plaintiff's onerous English and French language search terms, which generated more the 3,500 separate lines of search results. L'Oréal analyzed and reviewed more than 48,000 documents, and during 2019-2020, produced more than 1,600 documents. L'Oréal subsequently collected and produced 2,439 pages of text messages from 6 iPhones.

In 2020, in the course of providing supplemental discovery, L'Oréal identified specific issues with its data preservation and collection processes. L'Oréal systematically investigated, disclosed, and took remedial action to address each issue. L'Oréal re-collected all available email data for the 11 original custodians, plus three others, for the period of April 1, 2016 to June 30, 2019. The table below summarizes the custodians, the specific issue, and the remedial action taken:

| **Custodian** | **Email Issues** | **Remedial action in July 2020** |
|---|---|---|
| Johnson, Morales, Realson, Tayara | O365 default filter excluded certain files from the original Spring 2019 data export ("filter")[3] | Filter disabled, data re-collected |
| Alcolea, Conroy, Griggs, Rada, Wykoff | Filter; the O365 Spring 2019 collection inadvertently cut off in June 2018 ("cut off") | Filter disabled; data re-collected through June 30, 2019 |
| Krafft | Filter; cut-off; O365 email account purged when left L'Oréal | Krafft's email account as of 12/20/2019, was downloaded to his laptop hard drive, and all of that data was collected |
| Conroy, Krafft, Morales, Rada | Email archived on laptop hard drives | Archived email PST and OST files collected |
| Diorio | Filter; cut-off; data purged when left L'Oréal in summer of 2019. However, with the exception of data excluded by the filter, all of her emails through June 6, 2018 were collected in the original Spring 2019 data export. | All collected emails, plus the emails of three supplemental custodians (Catherine McNally, Farida Mercedes and Dick Younge), were searched for Diorio's name using to/from/cc/bcc fields |

L'Oréal's July 2020 collection outlined above netted over 238 GBs of email data, which was processed and deduplicated against previously-collected data. The results are still being searched,

---

[2] In addition to herself, Ms. Morales and the 8 hold recipients listed above, Plaintiff requested document discovery from Carol Realson (Group VP, HR).
[3] Plaintiff asserts that the filter "deleted" files (Dkt. 76, p. 2) – it did not. Rather, files that for various reasons were not able to be indexed were simply not exported. Any such files were included in the July 2020 recollection when the filter was disabled.

Honorable Lorna G. Schofield
September 14, 2020
Page 3

analyzed and reviewed but to date, only an extremely low number of newly-collected documents are responsive and no significant new documents or information has been identified.

Regarding text messages, L'Oréal instructed custodians to retain relevant communications. Upon collection, L'Oréal discovered data from 3 devices is no longer available:

| Custodian | Text message status[4] | Remedial source |
|---|---|---|
| Griggs, Krafft, Wykoff | Collected, produced from L'Oréal iPhones | |
| Morales | Collected, produced from personal iPhone of current employee | |
| Conroy, Diorio | Collected, produced from personal iPhones of former employees | |
| Tayara | L'Oréal iPhone irreparably damaged in 2019 before collection – text messages not available | Group text messages with Conroy, Griggs, and Krafft |
| Rada | L'Oréal iPhone inadvertently wiped when returned to L'Oréal IT in 2019 – text messages not available | Group text messages with Conroy, Griggs, Krafft; individual text messages with Conroy; paper print outs[5] |
| Alcolea | Disposed of personal iPhone in 2019 before collection – text messages not available | Group and individual text messages with Diorio, Griggs and/or Conroy |
| Realson | No relevant text messages | |

L'Oréal is unaware of relevant text message communications lost from devices that were not produced from another source.

---

[4] Plaintiff states her productions are complete, however, her own productions omit key communications directly related to her termination, including her text messages to Ms. Diorio about Plaintiff's peers. *See*, *e.g.*, Bates No. D0007616 ("I'm about to crawl so deep and so far into Bart's ass that he will think I live in his fucking small intestines."); Bates No. D0007586 ("Chizuru is about to get THESE HANDS...."). Plaintiff also failed to produce key text message exchanges with Ms. Conroy related to her (Plaintiff's) inappropriate behavior.

[5] Plaintiff produced only a few texts that she exchanged directly with Mr. Rada and the earliest was in April 2018. This undermines her speculation that there were a large volume of additional Rada text messages that were lost. Further, Plaintiff's allegation that text messages around the time of her termination between Rada and Plaintiff's team regarding complaints about her behavior were deleted is meritless. It is undisputed that Ms. Diorio provided HR and Mr. Rada with paper print-out and email versions of text messages and social media postings, produced as Bates No. D0004701; D000102-110; D000112-118. Plaintiff's allegation that relevant text messages between Ms. Conroy and Messrs. Griggs and Rada were deleted or withheld also is false. All relevant communications were produced. Plaintiff's letter includes multiple other misrepresentations regarding discovery, including for example, that handwritten notes concerning Ms. Morales' meetings with or about Ms. Johnson were not produced when in fact notes were produced in April 2019.

Honorable Lorna G. Schofield
September 14, 2020
Page 4

For the Court's convenience, attached as Exhibit A is a chart which identifies the custodians at issue in this motion, their relevance to Plaintiff's Complaint and the status of ESI collection and production.

### II. Sanctions Are Not Warranted Under Governing Rule 37(e)
#### a. Plaintiff misstates the law regarding Rule 37(e) sanctions

Plaintiff articulates the wrong legal standard for evaluating ESI spoliation claims. (Dkt. 76 at 4-6.) The 2015 Amendments to Rule 37(e) of the Federal Rules of Civil Procedure govern the loss of ESI, and the Committee Notes state that the amended rule "*forecloses reliance on inherent authority* or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) Advisory Committee's Note (2015) (emphasis added). Inexplicably, Plaintiff argues that the Court should apply the framework articulated in *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002) and its progeny to impose sanctions for the alleged ESI preservation failures in this case when the Advisory Committee Notes expressly state the amended Rule 37 "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." *Id.*; accord, *Citibank, N.A. v. Super Sayin' Publ'g, LLC*, 2017 WL 462601, at *2 (S.D.N.Y. Jan. 17, 2017) ("[D]istrict courts in [the Second Circuit] ha[ve] already acknowledged that the December 1, 2015 amendment to Rule 37 has been interpreted as overruling the holding in Residential Funding Corp." (internal quotation marks omitted). Courts are to apply Rule 37(e), not inherent authority, in this context. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (inherent powers should not be used when "contrary to any express grant of or limitation on the district court's power contained in a rule or statute.").

District courts in this Circuit have repeatedly affirmed that Rule 37(e) is the appropriate standard for evaluating ESI spoliation allegations. *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672, at *3 (S.D.N.Y. Dec. 16, 2019) ("District courts in the Second Circuit have recognized that Rule 37(e) replaces the prior framework for claims regarding a failure to preserve ESI."); accord, *Cruz v. G-Star Inc.*, 2019 WL 4805765, at *8 (S.D.N.Y. Sept. 30, 2019); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018); *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017).

Rule 37(e) provides: "If [ESI] that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

Here, to satisfy the mandatory predicate elements of Rule 37(e), Plaintiff must show that ESI that (i) should have been preserved was (ii) lost (iii) because Defendant did not take reasonable steps

Honorable Lorna G. Schofield
September 14, 2020
Page 5

to preserve it, and (iv) it cannot be restored or replaced through additional discovery. L'Oréal disputes the existence of evidence supporting the first three elements, but for the sake of page limitations focuses its response on the last element, *i.e.*, that the information cannot be "restored or replaced through additional discovery." As described above, L'Oréal replaced any missing data with supplemental collections from the original 11 custodians and data from 4 new custodians. *See, e.g., Watkins v. New York Transit Authority*, 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018) (denying sanctions for plaintiff's failure to preserve a cell phone because the moving party failed to establish that the ESI could not be restored or replaced through additional discovery). Additionally, Plaintiff is not entitled to every single document that could possibly have existed. Discovery must be reasonable, not perfect. *See, e.g.*, *Agerbrink v. Model Service LLC,* 2017 WL 933095 (S.D.N.Y. Mar. 8, 2017) ("The standard for evaluating discovery is reasonableness, not perfection."); *Freedman v. Weatherford Int'l,* 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) ("The Federal Rules of Civil Procedure do not require perfection"); *Chen-Oster v. Goldman, Sachs & Co.*, 2012 U.S. Dist. LEXIS 130123 (S.D.N.Y. Sept. 10, 2012) ("the standard for the production of ESI is not perfection[,]" but is one of "reasonable[ness.]") Defendant has provided reasonable discovery through the above-described supplemental data collection and search efforts.

### b. Plaintiff must produce evidence of intent to deprive and cannot rely on mere speculation

Even if Plaintiff were to meet all of the mandatory predicate elements of Rule 37(e), Plaintiff cannot show that L'Oreal acted with an "intent to deprive" Plaintiff of use of ESI in this case – another requirement to obtain serious sanctions like those Plaintiff seeks. Rule 37(e) prohibits awarding an adverse inference sanction for ESI loss absent a finding that the party acted with the intent to deprive another party of the information's use in the litigation. *See* Fed. R. Civ. P. 37(e)(2). *See, e.g.*, *Mazzei v. The Money Store*, 656 Fed. Appx. 558, 560 (2d Cir. 2016) (adverse inference can be granted only upon finding that a party acted with intent to deprive); *Leidig,* 2017 WL 6512353, at *11 ([T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence")).

Mere speculation is not enough—Plaintiff must produce evidence of L'Oréal's intent to deprive Plaintiff of ESI in this litigation. Whether this Court requires "clear and convincing" evidence of intent to deprive,[6] or applies the preponderance of the evidence standard,[7] Plaintiff cannot meet the standard. There is no evidentiary basis for Plaintiff's allegations that L'Oréal acted with an intent to deprive Plaintiff of relevant ESI in this litigation. Because Plaintiff cannot make the predicate showing of intent under Rule 37(e)(2), sanctions—particularly a severe sanction like an

---

[6] *See, e.g., Lokai Holdings*, 2018 WL 1512055, at *16 ("[T]his Court will not make a finding of intent to deprive on the basis of suspicion alone. Certainly, the evidence, as it stands, does not clearly and convincingly show that Defendants sought out emails that could disadvantage them in this case, and then chose those particular emails to delete, for the purpose of keeping them out of Lokai's hands."); *see also*, *Rothman v. City of New York,* 2019 WL 6210815, at *4 (S.D.N.Y. Nov. 21, 2019).

[7] *See, e.g.*, *Watkins v. New York City Transit Auth.*, 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018) (moving party "has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence.") (citing *McIntosh v. United States*, 2016 WL 1274585, at *33 (S.D.N.Y. Mar. 31, 2016)).

Honorable Lorna G. Schofield
September 14, 2020
Page 6

adverse inference—would be improper. *See Greer v. Mehiel*, 2018 WL 1626345, at *8 (S.D.N.Y. Mar. 29, 2018), *motion for relief from judgment denied*, 2019 WL 400607 (S.D.N.Y. Jan. 31, 2019), and *aff'd*, 805 F. App'x 25 (2d Cir. 2020). If Plaintiff is entitled to any relief at all—which she is not—it would be limited to curative measures under subsection (1) of Rule 37(e), and only if Plaintiff can show prejudice. *See Rothman v. City of New York*, No. 19-CV-225 (CM) (OTW), 2019 WL 6210815, at *3 (S.D.N.Y. Nov. 21, 2019). Here, Plaintiff has not and cannot meet this high standard.

### c. Plaintiff is not prejudiced because L'Oréal has cured potential discovery gaps consistent with Rule 37(e)(1)

Plaintiff has failed to meet her burden of demonstrating *how* she has been prejudiced, particularly when L'Oréal has gone to great lengths to cure any prior deficiencies. *See IBM v. Naganayagam*, 2017 WL 5633165 (S.D.N.Y. Nov. 21, 2017) (moving party is required to prove prejudice in situations where—as here—"'the abundance of preserved information [ ] appears sufficient to meet the needs of all parties.'") (citing Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment)). Plaintiff's speculation that she will suffer harm is not enough.[8]

### III. Plaintiff is not entitled to attorney fees or costs of motion practice

As it is yet to be determined whether relevant ESI has been lost, Plaintiff's motion and granting any remedy or relief, including fees or costs, is premature and should be held in abeyance.

### IV. Conclusion

For all the reasons outlined above, Plaintiff's motion should be denied in its entirety.

To the extent the Court requires additional information before ruling, we respectfully request an opportunity to be heard via conference and/or motion papers.

We thank Your Honor for your consideration.

Respectfully submitted,


*/s/ Jean L. Schmidt*

Jean L. Schmidt


cc:   Mr. Gregory S. Chiarello (via ECF)
      Ms. Allison L. Van Kampen (via ECF)

---

[8] *See supra* n.5.

# EXHIBIT A

| Custodian | Title | Relevance to Plaintiff's Complaint | Email/Text Messages[1] |
|---|---|---|---|
| **Decisions Makers** | | | |
| Dan Bethelmy-Rada | International Brand Director General Manager Matrix DMI<br><br>Plaintiff's Supervisor | Participated in the decision to terminate Plaintiff on June 15, 2018 after Diorio gave him paper copies of text messages Plaintiff had sent to Diorio. | All email collected<br><br>Text messages not available<br><br>Remedial source: group test messages with Conroy, Griggs, Krafft; individual text messages with Conroy; paper printouts<br><br>Text messages produced from Plaintiff's team show that Rada spoke to two members of her team (Griggs and Alcolea) *in person* in the days leading up to Plaintiff's dismissal – not via text as Plaintiff contends. (Dkt. 76, p.4).<br><br>Note - Plaintiff produced only a few text messages that are between just herself and Rada, the earliest in April 2018. |
| Maria Morales | Human Resources Business Partner for Bethelmy-Rada's group | Participated in the decision to terminate Plaintiff on June 15, 2018.<br><br>On June 15, 2018, Diorio emailed Morales copies of the text messages she had given Rada. | All email collected<br><br>All relevant text messages produced |

---

[1] All relevant email data collected in Spring 2019 has been produced. Additional email data collected in July 2020 is still being reviewed, and all relevant data will be produced.

| Custodian | Title | Relevance to Plaintiff's Complaint | Email/Text Messages[1] |
|---|---|---|---|
| **Plaintiff's Peers** | | | |
| Kelly Conroy | VP – Education | | All email collected<br><br>All relevant text messages produced<br><br>Note: Plaintiff failed to produce text messages with Conroy related to her (Plaintiff's) inappropriate behavior. |
| Nicolas Krafft | VP – Business Development | The only time Krafft is mentioned in Plaintiff's Amended Complaint is in connection with an incident between her and Krafft at the WorldWide meeting in France on May 28, 2018, and her complaint to Rada on June 6, 2018 that Krafft was sexist, and intolerant. (*See* Amended Compl. (Dkt. 20), ¶¶ 8, 219-237, 244-248). Plaintiff alleges that she was terminated in retaliation for her complaint to Rada about Krafft.<br><br>All emails and text messages regarding that incident and her complaint have been produced. | All relevant text messages produced<br><br>All email through June 4, 2018 collected in June 2019 except for filtered data, and all relevant emails produced.<br><br>Krafft's O365 email purged in July 2020, but all email as of 12/10/19 was copied to his laptop hard drive which was preserved and collected in July 2020. |

2

| Custodian | Title | Relevance to Plaintiff's Complaint | Email/Text Messages[1] |
|---|---|---|---|
| Nour Tayara | VP – Marketing | Plaintiff alleges that she was treated differently than Tayara because he received executive coaching and she did not. All documents related to executive coaching and Tayara's coaching have been produced. | All email collected<br><br>Text messages not available<br><br>Remedial source: group text messages with Conroy, Griggs, and Krafft |
| Chizuru Wykoff | AVP – Creative |  | All email collected<br><br>All relevant text messages produced |
| **Plaintiff's Subordinates** | | | |
| Jeanna Diorio | Manager – Digital | Diorio complained about Plaintiff to Human Resources in early April 2018 in person. Human Resources then conducted an investigation and interviewed all of Plaintiff's direct reports. Documents related to Diorio's complaint and the investigation have been produced.<br><br>In June 2018, Diorio complained to Compliance, Human Resources and Rada about Plaintiff and provided them with hard copies of Plaintiff's text messages to her and Plaintiff's social media posts. All documents related to Diorio's complaint, including emails, have been produced. | All relevant text messages produced<br><br>All email through June 6, 2018 collected in June 2019, except for filtered data, and all relevant emails produced.<br><br>Remedial source: search of all collected emails for the original 11 custodians, plus 3 additional custodians, for Diorio's name in from/to/cc/bcc fields<br><br>Plaintiff failed to produce relevant text messages she sent to Diorio, including text messages threatening Plaintiff's peers Chizuru and "Bart" |

3

| Custodian | Title | Relevance to Plaintiff's Complaint | Email/Text Messages[1] |
|---|---|---|---|
| Nahema Conesa Alcolea | Manager – Social Media | Alcolea was interviewed by Human Resources in April 2018 and voiced her complaints about Plaintiff.<br><br>Rada spoke to Alcolea on June 12, 2018 about Plaintiff. | All email collected<br><br>Text messages not available<br><br>Remedial source: group and individual text messages with Diorio, Griggs and/or Conroy |
| Taylor Griggs | Manager – Social Media and Director – Social Media | Griggs was interviewed by Human Resources in April 2018 and voiced his complaints about Plaintiff.<br><br>Rada spoke to Griggs on June 12, 2018 about Plaintiff. | All email collected<br><br>All relevant text messages produced |

4