UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMANDA JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　　　-against-<br><br>L'ORÉAL USA,<br><br>　　　　　　Defendant. | Civil Action No. 18-cv-9786 (JPC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO AMEND OR ALTER JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

    Standard for Relief Under Rule 59(e) ................................................................................ 1

    The Order's Unintended Consequences on Plaintiff's NYCHRL Claims .......................... 1

    NYCHRL Issues Potentially Foreclosed by the Order ....................................................... 4

    Requested Relief ................................................................................................................. 7

CONCLUSION ................................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Cases**                            **Page(s)**

*Albunio v. City of New York*,
    16 N.Y.3d 472 (2011) ...................................................................................................................2

*Baby v. Nassau Healthcare Corp.*,
    No. 14 Civ. 143297, 2017 WL 3279091 (E.D.N.Y. Feb. 6, 2017) ...............................................6

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
    365 F.3d 107 (2d Cir. 2004)..........................................................................................................6

*Bennett v. Health Management Sys.*,
    936 N.Y.S.2d 112 (1st Dep't 2011) .............................................................................................7

*Cain v. Esthetique*,
    182 F. Supp. 3d 54 (S.D.N.Y. 2016)............................................................................................3

*Endo Pharms. Inc. v. Amneal Pharms., LLC*,
    No. 12 Civ. 8060, 2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016) .................................................1

*In re General Motors LLC Ignition Switch Litig.*,
    477 F. Supp. 3d 170 (S.D.N.Y. 2020)..........................................................................................7

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009)..........................................................................................................2

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)......................................................................................................2, 3

*Munafo v. Metro. Transp. Auth.*,
    381 F.3d 99 (2d Cir. 2004)............................................................................................................1

*Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*,
    981 N.Y.S.2d 89 (1st Dep't 2014) ............................................................................................2, 5

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
    549 U.S. 422 (2007).....................................................................................................................7

*Vasquez v. Empress Ambulance Servs., Inc.*,
    835 F. 3d 267 (2d. Cir. 2016).......................................................................................................6

*Williams v. N.Y.C. Hous. Auth.*,
    872 N.Y.S.2d 27 (1st Dep't 2009) ............................................................................................2, 3

**Statutes/Rules**

Constitution Art. III, § 2, cl. 1..................................................................................................7

Fed. R. Civ. P. 59(e) ................................................................................................................ 1

N.Y.C. Admin. Code § 8-130(a)..............................................................................................2

## PRELIMINARY STATEMENT

Plaintiff Amanda Johnson ("Johnson"), submits this memorandum of law in support of her motion pursuant to Fed. R. Civ. P. 59(e) to modify and amend the Court's September 30, 2021 Opinion & Order ("Order"). (Dkt. No. 127.) Specifically, as described below, Plaintiff respectfully requests that the Court modify the Order to clarify that it does not constitute a binding determination of fact or law with respect to any issue raised by the New York City Human Rights Law ("NYCHRL") claims the Court dismissed without prejudice.

## Standard for Relief Under Rule 59(e)

Fed. R. Civ. P. 59(e) "give[s] the court discretion to alter or amend its findings and judgment. *Endo Pharms. Inc. v. Amneal Pharms., LLC*, No. 12 Civ. 8060, 2016 WL 1732751, at *1 (S.D.N.Y. Apr. 29, 2016). Among other reasons, a motion to reconsider under Rule 59(e) should be granted to correct a clear error or to prevent a manifest injustice. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). For the reasons explained below, if the Court's Order is not amended, Plaintiff will suffer a manifest injustice in the pursuit of her NYCHRL claims in state court.

## The Order's Unintended Consequences on Plaintiff's NYCHRL Claims

Plaintiff respects the Court's decision to decline supplemental jurisdiction over her NYCHRL discrimination and retaliation claims, thereby not addressing them on the merits. However, as currently worded, the Order has created a fundamentally unfair situation that inadvertently undermines the remedial purposes of the NYCHRL. Specifically, although the Court did not address the merits of Plaintiff's NYCHRL claims, it has drawn broad conclusions about Plaintiff's federal and state claims that may have collateral estoppel effect on aspects of Plaintiff's NYCHRL claims.

Whether at summary judgment or at trial, L'Oréal is certain to invoke the Order's factual and legal conclusions as binding precedent, and New York state courts frequently accept this argument, holding federal court summary judgment decisions to be dispositive of key elements of NYCHRL claims. *See, e.g.*, *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 981 N.Y.S.2d 89, 92-94, n.3 (1st Dep't 2014) (state court held that district court's conclusions of fact and law, including that plaintiff "ha[d] not introduced *any* evidence to contradict" defendant's witness statement, estopped plaintiff from re-litigating similar issues in state court; but, state court also recognized that were there is, "some evidence that even one of the defendant's explanations is false, misleading, or incomplete . . . the conclusion that ought to follow differs markedly between federal law and the City HRL.").

It is well established that claims brought under the NYCHRL must be reviewed "independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)); *see generally* N.Y.C Admin. Code § 8-130(a) ("The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed."); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that courts must "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible'" (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

However, for the state court to truly conduct the independent and more liberal review of Plaintiff's claims, it must be permitted to draw its own factual and legal conclusions. "[C]ourts

2

must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109. "The NYCHRL creates a lower threshold for actionable conduct and must be construed liberally in favor of discrimination plaintiffs, meaning that a defendant may be liable under the NYCHRL but not under state or federal statutes." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 71 (S.D.N.Y. 2016).

As currently worded, the Court's Order presents substantial risk that the independent and more liberal review required by the NYCHRL will not occur, because the state court will be bound by this Court's broad holdings. In other words, the practical effect of a federal court ordering summary judgment on federal claims and electing not to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims is to tie the hands of the state court, preventing it from allowing a full investigation into whether in fact "discrimination play[ed] *no role*" in the employer's actions. *See Williams*, 872 N.Y.S.2d at 78, n.27 (emphasis added). This cannot be the Court's intention. Furthermore, because the Order all but dooms Plaintiff's state court efforts before they even have begun, the Order also hampers, rather than promotes, judicial efficiency. Without the relief she now seeks, Plaintiff has little choice but to expend her limited resources on a time-consuming and costly appeal, or else choose to proceed with her NYCHRL claims under a considerable handicap, when her preference is to simply move forward with her surviving claims in state court.

The prejudice Plaintiff identifies may be easily addressed by modification of the Order to clearly limit any factual or legal findings to the federal and New York State Human Rights Law ("NYSHRL") claims only.  Plaintiff respectfully requests that the Court make such modification.

**<u>NYCHRL Issues Potentially Foreclosed by the Order</u>**

Plaintiff describes below in greater detail the specific prejudice to her resulting from the Order. In several instances, the Order draws generalized conclusions that are inconsistent with the record and consequential to Plaintiff's NYCHRL claims. For example, the Order largely adopts L'Oréal's version of the facts and does not clearly delineate the differences between the parties' factual recitations. Footnote 1 to the Order states that:

> Unless otherwise noted, the Court cites to only one party's Rule 56.1 Statement where the parties do not dispute the fact, the adverse party has offered no admissible evidence to refute that fact, or the adverse party simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

(Order at 2, n.1.) The Order further holds that Plaintiff's Rule 56.1 Statement "recites and restates all facts from her point of view." (*Id.*) The Court's general statements adopting Defendant's version of events are potentially catastrophic for Plaintiff's NYCHRL law claims, while not being necessary to the Court's decision on Plaintiff's federal and state claims. By addressing Plaintiff's factual recitation in this summary manner, the Order potentially prevents the state court from conducting an independent review of the case at any other stage, thereby preventing it from assessing whether discrimination or retaliation played *any* role in L'Oréal's decision to fire Plaintiff.

Two examples illustrate this concern. First, the Order states that, "the record does not support a reasonable inference that L'Oréal fired [Johnson] because of [her June 6, 2018 text] message." (Order at 26.) However, this conclusion is inconsistent with the record. Under the NYCHRL, a jury could reject as pretextual L'Oréal's version of events based on (i) the close temporal proximity between Johnson's complaint and her termination (13 days) (*see* Dkt. 98, Plaintiff's Opposition to Defendant's Rule 56.1 Statement of Material Facts and Affirmative

4

Rule 56.1 Statement of Material Facts ("Pl. 56.1") ¶¶ 200, 632, 633); (ii) serious inconsistencies between Bethelmy-Rada and Morales concerning whether or not Johnson's complaint was reported to HR (*see* Pl. 56.1 ¶¶ 612-13; *see also* Dkt. 106, Declaration of Maria Morales ("Morales Dec.") ¶ 57, n.1); (iii) L'Oréal's undisclosed meetings with legal counsel prior to firing Johnson (*see* Pl. 56.1 ¶¶ 246, 249, 633; Morales Dec. ¶ 68; Dkt. 101, Declaration of Daniel Bethelmy-Rada ("Rada Dec.") ¶ 53); (iv) Bethelmy-Rada's correspondence concerning the incident on which Johnson's complaint was based, wherein he stated, "I would like to prevent this from happening again" (Pl. 56.1 ¶ 207, Ex. 51); and (v) Plaintiff's other evidence of pretext identified in her response papers, including evidence suggesting Bethelmy-Rada was aware of Plaintiff's text messages prior to June 15, 2018 (*see id.* ¶¶ 218, 219, 632-679; *see also id.* ¶¶ 121, 167, 206, 227, 237, 240, 246, 429, 585, 611, Exs. 9 (at ¶ 193), Ex. 10, Johnson Tr. 140:25-144:10; Dkt. 111, Declaration of Amanda Johnson ¶¶ 187-90; Dkt. 110, Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 21-30). While the Court may not have agreed that these facts support a retaliation claim under Title VII or the NYSHRL, it is another matter altogether to conclude that the record does not support <u>any</u> finding of retaliation whatsoever. *Cf. Simmons-Grant*, 981 N.Y.S.2d at n.3.

Similarly, in holding that, "[t]here is simply <u>nothing</u> in the record to support that Bethelmy-Rada fired [Plaintiff] because she was depressed, rather than because she engaged in significant misbehavior" (Order at 31, emphasis added), the Court overlooked facts key to establishing that Johnson's disability played a role in L'Oréal's decision to fire Plaintiff, and in doing so, has hampered her ability to pursue her NYCHRL claims in state court. Plaintiff's argument is not that L'Oréal fired her because she was depressed. Discrimination is rarely so linear. Rather, Plaintiff contends that her medical condition resulted in bias that, as evidenced by

5

statements from Johnson's subordinates, Morales and Bethelmy-Rada, at least played a role in L'Oréal's decision to fire her. *See Vasquez v. Empress Ambulance Servs., Inc.*, 835 F. 3d 267 (2d. Cir. 2016) (cat's paw doctrine extends to employees who had "meaningful role" in adverse employment decision); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 125 (2d Cir. 2004) ("impermissible bias of a single individual . . . may taint the ultimate employment decision") (citations omitted); *see also Baby v. Nassau Healthcare Corp.*, No. 14 Civ. 143297, 2017 WL 3279091, at *17 (E.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*, 2017 WL 3278901 (Aug. 1, 2017) (dispute as to management's reaction to coworkers' discriminatory comments "supports the conclusion that triable issues of fact precludes summary judgment.").

The record contains ample evidence to support that, under the NYCHRL, discrimination played a role in L'Oréal's decision to fire Plaintiff. For example:

- Plaintiff's subordinates and Bethelmy-Rada frequently expressed that her worsening mental health and related absences were an issue, which contributed to L'Oréal's termination decision. (*See e.g.*, Pl. 56.1 ¶¶ 79, 118, 122, 147-48, 151, 153, 155-56, 222, 476-500, 514, 517, 522, 538, 540-49, 554-59, 661, 664, Exs. 36, 37, 38.) A jury could conclude that these comments reflect animus directed toward Johnson's condition, rather than her managerial performance.

- L'Oréal conceded that no single event caused it to reach a decision to fire Plaintiff, and that Bethelmy-Rada did not make the decision alone. (*See id.* ¶¶ 249, 253, 648, 663-65, Exs. 39, 125, 126; Morales Dec. ¶¶ 69-71; Rada Dec. ¶ 54.) Notably, L'Oréal's pre-termination email identified Plaintiff's absences (which it understood to be related to her medical condition) and "race comments" among the reasons for firing her. (*See* Pl. 56.1 ¶ 253, Ex. 39.)

- L'Oréal was worried about the "optics" of not addressing Plaintiff's health-related absences and hoped she would "self-select" out. (Pl. 56.1 ¶¶ 517, 608, Exs. 32, 52.)

- Bethelmy-Rada's correspondence days before Plaintiff's firing stated, "there were a couple incidents that got [him] worried about [Plaintiff's] emotional state + minor incident in the way she spoke to Nicholas Krafft," adding, "I would like to prevent this from happening again." (*Id.* ¶ 207, Ex. 51.)

- Morales's June 12, 2018, three correspondence days before Plaintiff's firing, stated that Plaintiff's absences "were turning into a performance issue" and that she was "getting worried that optically it is starting to appear that we are letting her not come to work and are not addressing her behavior. I know she needs help . . . ." (*Id.* ¶ 608, Ex. 52.)

Thus, there is evidence from which a fact-finder can conclude under the NYCHRL that L'Oréal's views on Plaintiff's medical condition played a role in its decision to fire her, regardless of whether the Court agrees that same evidence constitutes discrimination under federal or state law. *See Bennett v. Health Management Sys.*, 936 N.Y.S.2d 112, 124 (1st Dep't 2011) ("If the plaintiff responds with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, and thus such evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied.").

**Requested Relief**

The relief Plaintiff seeks is limited and well within this Court's authority. *See* Constitution Art. III, § 2, cl. 1; *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit."); *In re General Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 189 (S.D.N.Y. 2020) (district courts possess the inherent power to reasonably respond to the "problems and needs confronting the court's fair administration of justice.") (internal citations omitted).

Specifically, Plaintiff respectfully requests that, consistent with the Court's decision not to exercise jurisdiction over her NYCHRL claims, the Court amend the Order by adding wording stating clearly that (i) this Court has made no factual determination nor resolved any issue or legal question with respect to Plaintiff's NYCHRL claims; that (ii) in deciding Plaintiff's federal and state claims, the Court did not consider any fact, claim or issue against the standards

7

imposed by the NYCHRL; and that (iii) as such, the Court's decision provides no precedential (or other) limitation on another court's ability to independently review of any aspect of Plaintiff's NYCHRL claims.

Plaintiff also respectfully requests that, wherever the Court has drawn general conclusions, it qualify those conclusions appropriately given that, viewed pursuant to the NYCHRL, a factfinder may permissibly reach a different conclusion than that reached by this Court, regardless of whether it would do so under federal or state law standards. Plaintiff provides some suggested clarifying language, below:

- "the record does not support **under federal or NYSHRL standards** a reasonable inference that L'Oréal fired her because of this message." (Order at 26.)

- "[t]he record reflects that, **as a matter of federal and state law,** even after Johnson sent the June 6, 2018 text, L'Oréal had not decided to fire Johnson." (*Id.* at 36.)

- "[t]here is **insufficient evidence under federal or state law** to support that Bethelmy-Rada fired her because she was depressed, rather than because she engaged in significant misbehavior." (*Id.* at 31.)

- "**under federal and NYSHRL standards,** the record does not reflect that Bethelmy-Rada had seen the text messages or knew their full scope. And even if he had, there is nothing **under federal or NYSHRL standards** to suggest that her termination was racially motivated." (*Id.* at 26.)

- "L'Oréal's decision to hire someone who spoke out against L'Oréal's diversity issues to advise the company on improving its diversity and inclusion efforts hardly suggests **under federal or state law** that L'Oréal terminated Johnson because she was African American." (*Id.*)

- "she again cannot demonstrate **under federal or state law** that L'Oréal's reasons for firing her—her text messages and social media posts, as well as her performance difficulties—are pretext." (*Id.* at 30.)

- "L'Oréal plainly engaged in an interactive process with Johnson **sufficient under federal and state law**." (*Id.* at 32.)

- "Thus, the record reflects that L'Oréal reached out to provide several resources to Johnson and asked her what she needed. That Johnson failed to take advantage of those

resources or ask for an additional accommodation does not mean that L'Oréal denied her a reasonable accommodation **under federal or state law**." (*Id.* at 34.)

- "But there is nothing in the record **sufficient under federal or state law to support** this assertion beyond Johnson's speculation that she was treated poorly after returning from caring for her sister." (*Id.* at 35.)

- "But here the record simply does not support any inference **under federal or state law** that L'Oréal fired Johnson because of her text message about Krafft." (*Id.* at 37.)

- "Because the Court concludes that there is no reasonable inference under **federal or NYSHRL standards** that L'Oréal retaliated against Johnson for her June 6, 2018 text message regarding Krafft's "sexist" and "intolerant" behavior, the Court grants summary judgment on her retaliation claims as well." (*Id.*)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion to modify and amend the Court's September 30, 2021 Opinion & Order in the manner described above.

Dated: October 27, 2021
       New York, New York

By: *Gregory S. Chiarello*\_\_\_\_\_
Gregory S. Chiarello
OUTTEN & GOLDEN LLP
Cara E. Greene
Allison L. Van Kampen
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000